**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **Rodriquez Harris, DOC# 1280216,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| **v.** ) | **Case No.  _____** |
| ) | |
| ) | |
| **Brett Hays,** ) | |
| ) | |
| **Cody Bennett,** ) | |
| ) | |
| **Michele Mayes,** ) | |
| ) | |
| **Troy Steele,** ) | |
| ) | |
| **Stanley Payne,** ) | |
| ) | |
| **Lonnie Smallen,** ) | |
| ) | |
| **Anne Precythe,** ) | |
| ) | |
| **and** ) | ***JURY TRIAL DEMANDED*** |
| ) | |
| **John and Jane Does 1-5** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**COMPLAINT**

Plaintiff Rodriquez Harris, DOC ID # 1280216 ("Plaintiff"), by his attorneys, for his

causes of action against Defendants Brett Hays, Cody Bennett, Michele Mayes, Troy Steele,

Stanley Payne, Lonnie Smallen, Anne Precythe, and John and Jane Does 1-5 (collectively

"Defendants"), alleges as follows:

**NATURE OF THE CASE**

1

1.      In this civil rights action, brought pursuant to 42 U.S.C. § 1983, Plaintiff seeks compensatory and punitive damages against (a) Defendant Brett Hays ("Hays") for using excessive force against him without any penological purpose; (b) Defendants Cody Bennett ("Bennett") and Michele Mayes ("Mayes") for their failure to intervene and protect him Plaintiff from Hays; (c) Defendants Troy Steele ("Steele"), Lonnie Smallen ("Smallen"), and John and Jane Does 1-2 for their failure to protect Plaintiff from Hays; (d) Defendants Mayes and John and Jane Does 3-5 for retaliation against Plaintiff in violation of the First Amendment. Plaintiff also seeks preliminary and permanent injunctive relief against Defendant Stanley Payne ("Payne"), as Warden of the Eastern Reception, Diagnostic & Correctional Center ("ERDCC"), and Anne Precythe ("Precythe") as Director of the Missouri Department of Corrections ("MDOC"), ordering (1) that Plaintiff be transferred to a correctional facility other than ERDCC, where Plaintiff's constitutional rights continue to be violated, so that he may spend the final year of his prison sentence without continued assaults, retaliation, or fear of assaults or retaliations; and (2) the Missouri Department of Corrections to have more intensive background checks when hiring correctional officers. The actions by Hays, Bennett, Mayes, Steele, Smallen, and John Does 1-5 violated the Plaintiff's Eighth Amendment Constitutional Rights. The actions of Payne and Precythe continue to violate Plaintiff's Eighth Amendment Rights. Further, the actions of Hays violated Missouri state law.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is an individual currently incarcerated at ERDCC located at 2727 Highway K, Bonne Terre, Missouri 63628.

2

3.      Hays is or was at all relevant times employed as a correctional officer II at ERDCC. Hays's conduct herein alleged was under color of state law, and he is being sued in his individual capacity.

4.      Bennett is or was at all relevant times employed as a correctional officer I at ERDCC. His supervisor is Hays. Bennett's conduct herein alleged was under color of state law, and he is being sued in his individual capacity.

5.      Mayes is or was at all relevant times employed as a correctional officer I at ERDCC. Her supervisor is Hays. Mayes's conduct herein alleged was under color of state law, and she is being sued in her individual capacity.

6.      Smallen is or was at all relevant times employed as a Functional Unit Manager at ERDCC. Smallen's conduct herein alleged was under color of state law, and he is being sued in his individual capacity.

7.      Steele was at all relevant times employed as Warden at ERDCC. Steele's conduct herein alleged was under color of state law, and he is being sued in his individual and official capacities.

8.      Payne has succeeded Steele as Warden at ERDCC.  Payne's conduct herein alleged is under color of state law, and he is being sued in his individual and official capacities.

9.      Precythe is the Director of the MDOC and has been since February 2017. Precythe's actions alleged herein are under color of state law, and she is being sued in her individual and official capacities.

10.     John and Jane Does 1-5 were at all relevant times employed at ERDCC or with the MDOC. John and Jane Does 1-5's conduct herein alleged was under color of state law, and they are being sued in their individual capacities.

11.     Plaintiff alleges that each fictitiously named John Doe Defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries were proximately caused by such Defendants.

12.     This Court has jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1343 because Plaintiff's action arises under federal law, namely 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.  Supplemental jurisdiction over Plaintiff's state law claims is proper in this Court under 28 U.S.C. § 1367(a).

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as the claims set forth in this Complaint arose in this district and three of the Defendants reside in this district.

14.     Plaintiff's claim for attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

15.     Plaintiff has exhausted all administrative remedies before filing this Complaint.

## FACTUAL BACKGROUND

**A.     History of the Defendant Correctional Officers and the ERDCC**

16.     ERDCC has a long history of its correctional officers assaulting inmates and its inmates dying under suspicious circumstances. *See* St. Louis Post Dispatch article dated December 8, 2017 and attached **Exhibit A**.

17.     Over the last few years things have gotten even worse at ERDCC as correctional officers have increased their use of force against offenders to unprecedented numbers.

18.     Many offenders have attempted to commit suicide rather than deal with some of ERDCC's correctional officers.

19.     Steele was the Warden at ERDCC during the events alleged herein.

20.     In 2018, and after the February 2018 incident mentioned below, Payne took over from Steele as Warden of ERDCC.

**Brett Hays's history while working for the MDOC**

21.     Hays began working for the MDOC as a correctional officer I in December 2011 at the Southeast Correctional Center ("SECC") in Charleston, Missouri.

22.     Hays has a very "checkered" history both with his job for the MDOC and outside of work.

23.     In 2010 and before being hired with the MDOC as a correctional officer, Hays was charged with domestic violence and for his failure to appear in court. *See* State of New Mexico v. Brett E. Hays, Case No. DV532010 (Bernalillo County Metropolitan Court 2010).

24.     In 2011, a Scotland County Judge issued a full order of protection against Hays for adult abuse. *See* Case No. 11SD-PN00264;

25.     In 2014, a Mississippi County Judge entered *another* full order of protection against Hays for adult abuse. *See* Case No. 14MI-CV00320.

26.     Hays has been the subject of several internal investigations within the MDOC, including one previous offender abuse allegation and seven previous inquiries for making inappropriate comments to offenders.

27.     Hays has been involved in a staggering 77 uses of force since he started working for the MDOC in December 2011.

28.     In 2012, Hays made unprofessional comments toward staff at SECC.

29.     In 2013, Hays and a co-worker correctional officer grabbed another co-worker correctional officer and forced him to the ground while another correctional officer placed a water bottle near the inside of that correctional officer's anus and squirted water on him pretending to squirt it up his anus.

30.     In 2014, Hays informed the MDOC of the restraining order that was granted against him and in favor of the mother of his son at the Mississippi County Courthouse and let the MDOC know that the prosecuting attorney still wanted to pursue domestic charges against him.

31.     In February 2015, Hays was written up multiple times for not following MDOC policies.

32.     Notwithstanding his history of domestic violence, the numerous investigations of his behavior as a correctional officer, his borderline sexual assault of a coworker, his threats of violence against offenders, and his repeated violations of MDOC policies, Hays was promoted to correctional officer II in July 2015.

33.     In October 2015, Hays left his car unlocked in the SECC parking lot with a hand gun visible in the front seat in the Employee of the Month spot.

34.     In January 2016, after a use of force occurred involving another offender, Hays's supervisor believed Hays was negligent. During the use of force, Hays was observed just standing with his arms crossed, not assisting.

35.     In February 2016, it was noted that Hays lacked supervision of his staff and failed to meet the minimal expectations of his job duties.

36.     In June 2016, Hays told an offender "I'm going to rape you until your guts fall out" and "all I have to do is flick your guts."

37.     Another correctional officer who witnessed the June 2016 event stated that Hays was demeaning to the offender and saying things to aggravate him. In fact, Hays got close to the offender and stated, "you are just a bitch" and later even admitted he threatened the offender by saying he was "going to kill your bitch ass."

38.     In September, October, and November 2016, Hays violated multiple MDOC policies and procedures.

39.     Despite his history of malfeasance at SECC, including many unscheduled absences, Hays was allowed to transfer to ERDCC in December 2016 and began working in Housing Unit 2.

40.     In February 2017, while at ERDCC, Hays admitted he was overly familiar with his subordinates in a less than professional manner that led to complaints from subordinates.

41.     In February 2017, Hays was counseled for failing to keep the records of subordinate staff members confidential.

42.     In July 2017, Hays was placed on a 90-day performance plan to show improvement in professional conduct when dealing with subordinate employees.

43.      In January 2018, Hays failed to comply with certain procedures that could have allowed an offender who was attempting to commit suicide the ability to do so.

44.     Hays direct report at ERDCC was Smallen in February 2018.

**Bennett's history at MDOC**

45.     Bennett began working at the MDOC as a corrections officer I in November 2014 at SECC.

46.     Months before he began working for the MDOC, Bennett pled guilty to supplying liquor to minors and making a false statement about doing so. *See* Case No. 14PR-CR00295 (Circuit Court of Perry County, Missouri).

47.     Bennett and Hays worked together at SECC and are friends outside of work.

48.     Bennett transferred to ERDCC on April 16, 2017 and was also assigned to Housing Unit 2 where his supervisor is Hays.

7

49.     Since November 2014, Bennett has been involved in 17 uses of force.

50.     Bennett has had at least two instances of documented unprofessional behavior, including making deals with offenders and refusing directives from immediate supervisors.

**Mayes's history at MDOC**

51.     Mayes began her employment as a correctional officer I with the MDOC in January 2012.

52.     Mayes is also assigned to housing unit 2 at ERDCC and her supervisor is Hays.

53.     Upon information and belief, Mayes has also had multiple disciplinary actions taken against her at ERDCC.

54.     In 2018, Mayes sent Plaintiff a note (a/k/a kite within the MDOC) indicating that she wanted them to "be together" and asked him to be a dorm worker so he could "come out of the cell and they could have sex." Plaintiff rejected Mayes's advances.

55.     Plaintiff reported to others that Mayes had people threaten him and try to fight him because he rejected her.

**B.     Plaintiff's history at ERDCC and the events in question**

56.     Plaintiff was born in East St. Louis, Illinois but moved to Jefferson City, Missouri when he was five years old.

57.     Plaintiff was beaten by his stepfather as a young child and has had little contact with the rest of his family, making him feel alone and helpless while at ERDCC.

58.     Plaintiff spent much of his childhood in a boys home.

59.     Plaintiff has been diagnosed with antisocial personality disorder and depression.

60.     Plaintiff's prison sentence began at the ERDCC on October 4, 2016.

61.     Plaintiff is set to be released from prison in November 2019.

62.     Since approximately Spring 2017, Hays and Bennett have been harassing and threatening Plaintiff.

63.     Plaintiff consistently reported the harassment he was receiving from Hays and Bennett to others within ERDCC.

64.     In July 2017, Plaintiff requested protective custody in administrative segregation – which has cameras – because he was afraid of continued abuse from the ERDCC's correctional officers.

65.     Plaintiff has been housed in administrative segregation ever since.

66.     Because of the constant harassment by Hays and Bennett, Plaintiff has made two suicide attempts.

67.     On or around January 25, 2018, Hays and Bennett called Plaintiff a ni***r, told Plaintiff that his family did not care about him, that he should kill himself, and that they were going to kick his a**.

68.     Comments like this have come from both Bennett and Hays multiple times since they met Plaintiff.

69.     On multiple occasions, Hays told Plaintiff that he was soft, and he did not have the courage to commit suicide.

70.     Hays and Bennett told Plaintiff how they "ran together at Charleston [SECC] and how they get away with a lot of things they do."

71.     Plaintiff told many people about the "beef" he had with Hays and Bennett and that he was tired of these officers "f***ing with me."

72.     On or around the same date – January 25, 2018 – Plaintiff told correctional officer Lloyd Russell and others he was suicidal because he could not take the harassment from Hays and

Bennett and was angry because he believed he was going to receive a conduct violation for threatening Hays and Bennett.

73.     Plaintiff showed Lloyd Russell some pills of Remeron that he took to treat his depression and ingested them in an effort to commit suicide.

74.     Thereafter, Plaintiff was sent to a cell where he could not harm himself (the "Safety Cell").

75.     On February 6, Plaintiff advised Ashley Kopp, who worked for Corizon Correctional Healthcare as a qualified mental health professional, that he was no longer suicidal and should not be in the Safety Cell, but he also warned her about the likely assault that Hays and Bennett planned against him.

76.     Nothing was done to protect Plaintiff about this potential assault from Hays and Bennett that Plaintiff foresaw.

77.     On the morning of February 7, 2018, while in the protective cell, Plaintiff was washing up in his cell and covered his cell window with toilet paper because a female – Mayes – was on duty and he felt uncomfortable washing up in front of her.

78.     Because Plaintiff was in the Safety Cell and he refused directives to uncover the tissue from the cell camera, a planned use of force was authorized to remove Plaintiff from his cell.

79.     Plaintiff refused to come out because Hays and Bennett were in the wing and he feared they were going to try to assault him.

80.     Mayes came to Plaintiff's cell and assured Plaintiff that Hays and Bennett were not in the wing.

81.    In fact, Hays was in the wing and he applied pepper spray to Plaintiff's cell through his food service port.

82.    After being pepper-sprayed, Plaintiff agreed to wrist restraints and was handcuffed by Mayes from the outside of the cell.

83.    Mayes, Bennett, and Hays then went into Plaintiff's cell to remove him and he was then grabbed by Bennett and thrown hard into a pole while he was restrained and in handcuffs.

84.    Hays then threw the Plaintiff on to the floor where he was dragged on his backside out of his cell.

85.    Hays ordered that Plaintiff then turn over on his stomach, but he refused because he could barely breathe from the pepper spray and was afraid he would lose his breath if his face was on the ground.

86.    Mayes and Bennett began twisting Plaintiff's wrists, causing Plaintiff significant pain.

87.    Plaintiff was then repeatedly punched in the face with a closed fist by Hays while his hands were restrained in handcuffs behind his back and he was held down by Bennett and Mayes.

88.    This assault was caught on videotape.

89.    Plaintiff was knocked unconscious by Hays.

90.    Hays did not stop punching the Plaintiff even after he had lost consciousness.

91.    Mayes stated that she did not witness Plaintiff attempt to assault anyone, nor could he have as he was restrained.

92.     Phillip A. Anderson ("Anderson"), correctional officer III at the time, also observed Plaintiff lying on the floor with his arms restrained behind his back as Hays was striking Plaintiff in the face while restrained by Mayes and Bennett.

93.     Hays did not comply with Anderson's order to stop and would not stop striking Plaintiff until Anderson physically pulled Hays off of him.

94.     Roy Eldridge ("Eldridge"), correctional officer I, also observed Hays swing at Plaintiff's head four times while he was restrained by Mayes and Bennett.

95.     Eldridge also told Hays to stop but Hays failed to stop until Anderson intervened.

96.     Staff witnesses to the incident believed Hays's actions were unjustified and that he used excessive force.

97.     Other offenders also witnessed the beating given to Plaintiff.

98.     In fact, one offender – Andre Hamilton DOC ID #1207678 – witnessed the beating and filed an Informal Resolution Request ("IRR") with ERDCC claiming that he suffered trauma from witnessing Plaintiff getting punched repeatedly by Hays while he was held down by Mayes and Bennett. Less than one month later, Hamilton was then transferred to Jefferson City Correctional Center per his IRR request.

99.     Plaintiff also filed an IRR, requesting to be transferred to another facility after the beating. That request was denied.

100.    Plaintiff was badly hurt by Hays's beating.

101.    Immediately after the beating, Plaintiff's face swelled up.

102.    Plaintiff has suffered vision loss in his left eye and now wears glasses as a result of the attack.

103.    Plaintiff also now suffers from migraines, something he never experienced before the beating.

104.    Further, Plaintiff wakes up during the middle of night in fear for his life, with night sweats causing him significant and real emotional distress.

105.    After the beating, the right hand of Hays was swollen from striking Plaintiff so hard.

106.    The MDOCs policies state that striking offenders with a closed fist is only to be utilized for self-defense purposes and must not applied to the head or facial area of an offender.

107.    Hays was charged by the Prosecuting Attorney of St. Francois County for offender abuse under RSMo 217.405, a class D felony, for striking Plaintiff in the face with a closed fist while Plaintiff's hands were restrained behind his back. *See* 18SF-CR00567. That case in ongoing.

108.    Plaintiff has not been the same person since the beating and now suffers from post-traumatic stress disorder.

109.    Since February 7, 2018, Plaintiff has been retaliated against by other correctional officers at ERDCC because one of their own co-worker's has been criminally charged.

110.    For instance, on April 6, 2018 and July 25, 2018, Plaintiff was assaulted again by correctional officers for filing grievances related to the February 7, 2018 assault. All of this is believed to have been caught on camera.

111.    And on September 24, 2018, Plaintiff was brought out of his cell while he was naked and then sexually assaulted by two correctional officers as one placed their finger in Plaintiff's anus and the other grabbed his penis while he was restrained. This is also believed to have been caught on camera.

112.    On March 9, 2018, Plaintiff reported Mayes was harassing him ever since the Hays' assault and asking that he not press charges or file a lawsuit against her or her coworkers.

113.    Mayes has offered Plaintiff extra food trays and tobacco not to press the issue.

114.    Mayes also wrote Plaintiff up for trying to seduce her despite his earlier rejections.

115.    Plaintiff has received multiple conduct violations for no reason at all since February 7, 2018 after filing IRR's and grievances related to the incidents mentioned above.

116.    Plaintiff has filed multiple IRR's about all the aforementioned retaliations but ERDCC failed to respond to them.

117.    As a proximate result of the aforementioned acts of Hays, Bennett, and Mayes, Plaintiff has suffered and continues to suffer from personal injuries, including but not limited to physical pain, vision loss, fear, inability to sleep, physical and emotional pain, torment, degradation, humiliation, anguish, anxiety, embarrassment, and emotional distress, resulting in some permanent impairment, disability and damage and claims general damages for such physical and mental pain.

118.    The conduct of Hays, Bennett, and Mayes, as described herein, was intentional, malicious, unprivileged, despicable, outrageous, and so vile, base, contemptible, criminal, miserable, wretched, and loathsome that it is looked down upon and despised by ordinary decent people, and this conduct was directed at Plaintiff by Hays, Bennett, and Mayes with the intent that it would harm Plaintiff.

## CAUSES OF ACTION

## COUNT I

*CRUEL AND UNSUAL PUNISHMENT – 42 U.S.C. § 1983*
*(EXCESSIVE FORCE – AGAINST HAYS)*

119.    Plaintiff incorporates by reference his previous allegations as if fully set forth herein.

120.    The Eighth Amendment of the United States Constitution guarantees all person the right to be free from cruel and unusual punishment. 42 U.S.C. § 1983 provides a private right of action for conduct that violates this right.

121.    At all relevant times, Plaintiff was serving a sentence at ERDCC as a result of a criminal conviction.

122.    Hays inflicted cruel and unusual punishment on Plaintiff by repeatedly beating him with a closed fist while Plaintiff was restrained and without provocation. This conduct caused significant physical pain, vision loss, migraines, amongst other injuries to Plaintiff and has caused him continuing nightmares. He now lives in constant fear for his safety and well-being.

123.    Hays acted under color of state law.

124.    Hays is liable to Plaintiff for using excessive force that amounted to cruel and unusual punishment that served no legitimate penological purpose. The force was applied maliciously and sadistically for the purpose of causing harm.

125.    As a proximate cause of the evil, willful, wanton, malicious, sadistic conduct of Hays, Plaintiff suffered excruciating pain, loss of vision, migraines, and emotional distress. Plaintiff is informed and believes, and upon such information and belief, alleges that this emotional injury will continue into the future. As a further proximate result of the aforementioned conduct, Plaintiff will require the services of medical and psychological professionals for treatment.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for compensatory damages that will fairly compensate him for the harm due to this violation, for his attorneys' fees and costs herein expended, for an additional award of punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT II

*CRUEL AND UNSUAL PUNISHMENT – 42 U.S.C. § 1983*
*(FAILURE TO INTERVENE – AGAINST DEFENDANTS MAYES AND BENNETT)*

126.    Plaintiff incorporates by reference his previous allegations as if fully set forth herein.

127.    The Eighth Amendment of the United States Constitution guarantees all person the right to be free from cruel and unusual punishment. 42 U.S.C. § 1983 provides a private right of action for conduct that violates this right.

128.    At all relevant times, Plaintiff was serving a sentence at ERDCC as a result of a criminal conviction.

129.    Hays used excessive force against Plaintiff that amounted to cruel and unusual punishment that served no legitimate penological purpose. The force was applied maliciously and sadistically for the purpose of causing harm.

130.    Bennett and Mayes knew or had reason to know about the excessive force that Hays subjected Plaintiff to, and they knew the attack was going to happen before it did.

131.    Bennett and Mayes had the opportunity to prevent the excessive use of force by Hays but intentionally failed to do so.

132.    Bennett and Mayes acted under color of state law.

133.    As a proximate result of the evil, willful, wanton, malicious, sadistic conduct of Bennett and Mayes, Plaintiff suffered excruciating pain and emotional distress. Plaintiff is

informed and believes, and upon such information and belief, alleges that this emotional injury will continue into the future. As a further proximate result of the aforementioned conduct, Plaintiff will require the services of medical and psychological professionals for treatment.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for compensatory damages that will fairly compensate him for the harm due to this violation, for his attorneys' fees and costs herein expended, for an additional award of punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT III

*CRUEL AND UNSUAL PUNISHMENT – 42 U.S.C. § 1983*
*(FAILURE TO PROTECT - DEFENDANTS STEELE, SMALLEN,*
*AND JOHN AND JANE DOES 1-2)*

134.    Plaintiff incorporates by reference his previous allegations as if fully set forth herein.

135.    Defendants Steele, Smallen, and John and Jane Does 1-2 were aware of the facts mentioned above from which they could infer the existence of a substantial risk of serious harm to Plaintiff.

136.    Defendants Steele, Smallen, and John and Jane Does 1-2 actually drew the inference of the substantial risk of serious harm to Plaintiff.

137.    Defendants Steele, Smallen, and John and Jane Does 1-2 failed to take reasonable steps to protect Plaintiff.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for compensatory damages that will fairly compensate him for the harm due to this violation, for his attorneys' fees and costs herein expended, for an additional award of punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT IV

*FIRST AMENDMENT RETALIATION – 42 U.S.C. § 1983*
*(AGAINST DEFENDANTS MAYES AND JOHN AND JANE DOES 3-5)*

138.   Plaintiff incorporates by reference his previous allegations as if fully set forth herein.

139.   Defendants Mayes and John and Jane Does 3-5 have on multiple occasions retaliated against Plaintiff and in violation of his First Amendment rights for filing IRR's and grievances related to the incident in question and the actions of correctional officers throughout the ERDCC.

140.   Plaintiff has been issued more conduct violations since he was assaulted than he received ever before the assault.

141.   Plaintiff's filing of an IRR or grievance is a protected activity.

142.   Defendants Mayes and John and Jane Does 3-5 took adverse action against Plaintiff that would chill a person of ordinary firmness from continuing in the activity.

143.   Defendants Mayes and John and Jane Does 3-5's adverse actions were motivated at least in part by the exercise of the protected activity.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for compensatory damages that will fairly compensate him for the harm due to this violation, for his attorneys' fees and costs herein expended, for an additional award of punitive damages, and for such other and further relief as the Court deems just and proper.

## COUNT V

### *FAILURE TO TRAIN/SUPERVISE – 42 U.S.C. § 1983*
### *(AGAINST DEFENDANTS PRECYTHE, STEELE, AND PAYNE)*

144.    Plaintiff incorporates his previous allegations as if fully set forth herein.

145.    Defendant Precythe has failed to train/supervise the wardens at MDOC's prisons, who hire corrections officers with a history of domestic violence and who fail to take prompt remedial action to discipline or terminate the employment of corrections officers who abuse coworkers or offenders

146.    Defendant Steele has failed to train/supervise corrections officers with a history of domestic violence and has failed to take prompt remedial action to discipline or terminate the employment of corrections officers who abuse coworkers or offenders.

147.    Defendant Payne has failed to train/supervise corrections officers with a history of domestic violence and has failed to take prompt remedial action to discipline or terminate the employment of corrections officers who abuse coworkers or offenders.

148.    Defendant Hays was hired by the MDOC despite a record of domestic violence.

149.    Defendant Hays was allowed to continue as a corrections officer even after two Missouri courts entered additional orders of protection against him.

150.    Defendant Hays was one of a number of corrections officers who held down a coworker and pretended to sexually assault them with a water bottle.

151.    Defendant Hays was not seriously disciplined for his repeated inappropriate behavior.

152.    Defendant Hays was actually promoted after engaging in conduct that should not be tolerated at a correctional institution.

153.    As a direct and proximate result of Precythe's failure to train/supervise wardens

who hire corrections officers with a history of domestic violence and who fail to take prompt remedial action to discipline or terminate the employment of corrections officers who abuse coworkers or offenders, Plaintiff was injured by Defendant Hays.

154.    As a direct and proximate result of Steele and Payne's failure to train/supervise corrections officers with a history of domestic violence, and their failure to take prompt remedial action to discipline or terminate the employment of corrections officers who abuse coworkers or offenders, Plaintiff was injured by Defendant Hays.

155.    Defendants Precythe and Payne have failed transfer Plaintiff to another institution to prevent further retaliation and violence against him.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf against Defendants Precythe and Payne, order them to transfer Plaintiff to a different facility where he will not be retaliated against, order them to establish policies for conducting background checks of potential correctional officers for a history of violence, order them to enact policies ensuring that correctional officers found to have engaged in violent conduct toward coworkers or offenders are terminated, award reasonable attorneys' fees and costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT VI

*ASSAULT – MISSOURI STATE LAW*
*(AGAINST DEFENDANT HAYS)*

156.    Plaintiff incorporates his previous allegations as if fully set forth herein.

157.    Hays raised his closed first in the air with the intent to hit Plaintiff in the face.

158.    Hays caused Plaintiff to be in apprehension on bodily harm.

159.    Hays injured Plaintiff.

160.    Plaintiff suffered damages as a result of the attack.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for damages that will fairly compensate him for the assault he has endured; for his attorneys' fees and costs herein expended; for an additional award of punitive damages; and for such other and further relief as the Court deems just and proper.

## COUNT VII

*BATTERY – MISSOURI STATE LAW*
*(AGAINST DEFENDANT HAYS)*

161.    Plaintiff incorporates his previous allegations as if fully set forth herein.

162.    Hays struck Plaintiff by throwing his closed fist into Plaintiff's face.

163.    The contact Hays made with Plaintiff's face was offensive and unwelcome.

164.    The assault and touching were unlawful and unjustified.

165.    Plaintiff has suffered severe damages as a result of the battery inflicted by Hays.

WHEREFORE, Plaintiff asks this Court to enter Judgment on his behalf for damages that will fairly compensate him for the battery he has endured by Hays's actions; for his attorneys' fees and costs herein expended; for an additional award of punitive damages; and for such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court:

(A)    Enter judgment in favor of Plaintiff and against Defendants;

(B)    Award Plaintiff compensatory and punitive damages against all Defendants for their violation of Plaintiff's federal constitutional rights under color of state law;

(C)    Award Plaintiff compensatory and punitive damages against Defendant Hays for battery and assault under state law;

(D)

(E)     Enter Preliminary and Permanent Injunctive Relief requiring that Defendants Precythe and/or Payne move Plaintiff to a different correctional facility and prevent MDOC employees from engaging in further retaliatory assaults against Plaintiff;

(F)     Enter Injunctive Relief requiring Defendants Precythe and/or Payne perform more intensive background checks to avoid hiring correctional officers with a history or domestic or other violent acts.

(G)     Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law; and

(H)     Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial of all claims and issues so triable.

Respectfully submitted,

/s/ J. Andrew Hirth
J. Andrew Hirth, MO57807
TGH Litigation LLC
913 East Ash Street
Columbia, MO 65201
Tel. 573.256.2850
Fax 573.213.2201
Andy@TGHLitigation.com

Michael S. Foster* (Admission Pending to
U.S. District Court for Eastern District of
Missouri #MO 61205)
Foster Wallace, LLC
1501 Westport Road
Kansas City, MO 64111
Tel. No. 816.249.2101
Fax No. 816.249.2170
Michael@fosterwallace.com

*Attorneys for Plaintiff*