# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| RODRIQUEZ HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18CV2072 HEA |
| | ) | |
| BRETT HAYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Anne Precythe, Stanley Payne, Troy Steele, and Lonnie Smallen's Motion to Dismiss [Doc. No. 20]. Plaintiff opposes the motion. For the reasons set forth below, the Motion to Dismiss will be granted. Plaintiff will be granted leave to amend his complaint.

## Facts and Background

Plaintiff filed this action against Defendants Brett Hays, Michele Mayes, Cody Bennett, Troy Steele, Stanley Payne, Lonnie Smallen, and Anne Precythe for, *inter alia*, alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment arising from Hays' alleged use of excessive force on Plaintiff. Specifically, Plaintiff alleges that: Hays used excessive force (Count I); Mayes and Bennett failed to intervene in Hays' use of excessive force (Count II); Steele and Smallen failed to protect Plaintiff from Hays (Count III); and Precythe,

Steele, and Payne failed to train or supervise subordinates, resulting in Plaintiff's injury (Count V). Plaintiff also claims First Amendment retaliation against Mayes (Count IV) and assault (Count VI) and battery (Count VII) against Hays.

For the purpose of this Motion to Dismiss, the allegations in the Complaint are taken as true. Plaintiff's Complaint alleges the following:

Plaintiff is currently incarcerated. He began his prison sentence at the ERDCC on October 4, 2016. Plaintiff has been diagnosed with antisocial personality disorder and depression. Due to childhood abuse and lack of contact with family, Plaintiff felt alone and helpless at ERDCC. When his Complaint was filed on December 12, 2018, Plaintiff was still housed at ERDCC, although he has since been moved to an MDOC facility 15 miles away. Plaintiff is set to be released from prison in November 2019.

Precythe has been the Director of MDOC since February 2017. Steele was the warden at ERDCC until at least February 8, 2018, the date Hays assaulted Plaintiff. In 2018, Payne succeeded Steele as warden of ERDCC. In February 2018, Hays reported directly to Functional Unit Manager Smallen.

ERDCC has a long history of its correctional officers assaulting inmates and its inmates dying under suspicious circumstances. Over the last few years, correctional officers at ERDCC have increased their use of force against offenders

to unprecedented numbers. Many offenders have attempted to commit suicide rather than deal with some of ERDCC's correctional officers.

In 2010, before being hired with the MDOC as a correctional officer, Hays was charged with domestic violence and for his failure to appear in court in the State of New Mexico. In 2011, a Scotland County, Missouri court issued a full order of protection against Hays for adult abuse.

Hays began working for MDOC as a correctional officer I in December 2011 at the Southeast Correctional Center ("SECC") in Charleston, Missouri. Hays has been the subject of several internal investigations at MDOC, including one previous allegation of offender abuse and seven inquiries for making inappropriate comments to offenders. He has been involved in 77 uses of force since he started working for MDOC. Also, in 2012, Hays made unprofessional comments toward staff at SECC.

In 2014, a Mississippi County, Missouri court entered another full order of protection in favor of the mother of his son and against Hays for adult abuse. Hays informed MDOC of the order of protection against him and informed MDOC that the prosecuting attorney still wanted to pursue domestic charges against him.

In February 2015, Hays was written up multiple times for not following MDOC policies. In July 2015, Hays was promoted to correctional officer II. That October, Hays left his car unlocked in the SECC parking lot with a hand gun

visible in the front seat in the Employee of the Month spot. During a use of force incident in January 2016, Hays was observed standing with his arms crossed, not assisting, resulting in his supervisor believing Hays to be negligent. A February 2016 note was made that Hays lacked supervision of his staff and failed to meet the minimal expectations of his job duties.

In June 2016, Hays told an offender "I'm going to rape you until your guts fall out" and "all I have to do is flick your guts." Another correctional officer who witnessed this event stated that Hays demeaned the offender and said things to aggravate him. Hays got close to the offender and stated, "you are just a bitch." Hays later admitted that he threatened the offender by saying he was "going to kill your bitch ass." In September, October, and November 2016, Hays violated multiple MDOC policies and procedures.

In December 2016, Hays transferred to ERDCC and began working in Housing Unit 2. In February 2017, Hays admitted he was overly familiar with his subordinates in a less than professional manner, which led to complaints from subordinates. That month, Hays was also counseled for failing to keep the records of subordinate staff members confidential. In July 2017, Hays was placed on a 90-day performance plan to show improvement in professional conduct when dealing with subordinate employees. In January 2018, Hays failed to comply with certain

procedures. This failure could have resulted in a suicidal offender having the ability to kill himself.

Bennett began working as a corrections officer I at SECC in November 2014. Months before, Bennett had pled guilty to supplying liquor to minors and making a false statement about doing so. Bennett and Hays worked together at SECC and are friends outside of work. Bennett transferred to ERDCC on April 16, 2017. He works in Housing Unit 2, where Hays is his supervisor. Since November 2014, Bennett has been involved in 17 uses of force. Bennett has had at least two documented instances of unprofessional behavior, including making deals with offenders and refusing directives from immediate supervisors.

Mayes began working as a correctional officer I in January 2012. She works in Housing Unit 2 at ERDCC, where Hays is her supervisor. Mayes has been the subject of multiple disciplinary actions at ERDCC. In 2018, Mayes sent Plaintiff a note indicating that she wanted them to "be together" and asked him to be a dorm worker so he could "come out of the cell and they could have sex." Plaintiff rejected Mayes' advances. Because Plaintiff rejected her, Mayes had people threaten and try to fight him. Plaintiff reported this to others.

Hays and Bennett have been harassing and threatening Plaintiff since the spring of 2017. Plaintiff consistently reported the harassment he was receiving from Hays and Bennett to others within ERDCC. Because of the constant

harassment by Hays and Bennett, Plaintiff has made two suicide attempts. On multiple occasions, Hays told Plaintiff that he was soft, and he did not have the courage to commit suicide. Hays and Bennett told Plaintiff that they "ran together at Charleston [SECC]" and "how they get away with a lot of things they do." Plaintiff told many people about the "beef" he had with Hays and Bennett and that he was tired of them "f***ing with me." In July 2017, Plaintiff requested protective custody in administrative segregation because he was afraid of continued abuse from the ERDCC's correctional officers. Since then, he has been housed in administrative segregation, which has cameras.

On or around January 25, 2018, Hays and Bennett called Plaintiff a n****r, told Plaintiff that his family did not care about him, that he should kill himself, and that they were going to kick his a**. Hays and Bennett have made similar statements to Plaintiff on multiple occasions. After the January 25 incident, Plaintiff told correctional officer Lloyd Russell and others that he was suicidal because he could not take the harassment from Hays and Bennett, and that he was angry because he believed he was going to receive a conduct violation for threatening Hays and Bennett. Plaintiff showed Lloyd Russell Remeron pills that he took to treat his depression and ingested them in a suicide attempt. Thereafter, Plaintiff was sent to a cell where he could not harm himself (the "Safety Cell").

On February 6, Plaintiff advised Ashley Kopp, who worked for Corizon Correctional Healthcare as a qualified mental health professional, that he was no longer suicidal and should not be in the Safety Cell. He also warned her about the likely assault that Hays and Bennett planned against him. Nothing was done to protect Plaintiff about this potential assault from Hays and Bennett.

On the morning of February 7, 2018 Plaintiff was washing up in the Safety Cell. He covered the cell window with toilet paper because a female guard (Mayes) was on duty and he felt uncomfortable washing up in front of her. Because Plaintiff was in the Safety Cell and he refused directives to uncover the tissue from the cell window, a planned use of force was authorized to remove Plaintiff from his cell. Plaintiff refused to come out because Hays and Bennett were in the wing and he feared they were going to try to assault him. Mayes came to Plaintiff's cell and assured him that Hays and Bennett were not in the wing. However, Hays was in the wing and he applied pepper spray to Plaintiff's cell through his food service port. After being pepper-sprayed, Plaintiff agreed to wrist restraints and was handcuffed by Mayes from the outside of the cell. Mayes, Bennett, and Hayes entered Plaintiff's cell to remove him. While Plaintiff was restrained and handcuffed, Bennett grabbed Plaintiff and threw him hard into a pole. Hays then threw the Plaintiff on to the floor and dragged him out of the cell on his backside. Hays ordered Plaintiff to turn over on his stomach, but Plaintiff

refused because he could barely breathe from the pepper spray and feared he would lose his breath if he was facedown. Mayes and Bennett then twisted Plaintiff's wrists, causing Plaintiff significant pain. Hays then repeatedly punched Plaintiff in the face with a closed fist while Plaintiff was restrained, handcuffed behind his back, and held down by Bennett and Mayes. Plaintiff was knocked unconscious by Hays, who did not stop punching even after Plaintiff had lost consciousness. This assault was caught on videotape.

Mayes stated that she did not witness Plaintiff attempt to assault anyone, nor could he have as he was restrained. Correctional officer III Phillip A. Anderson ("Anderson") also observed Plaintiff on the floor, restrained by Mayes and Bennett with his arms restrained behind his back while Hays was striking Plaintiff in the face. Hays did not comply with Anderson's order to stop. Hays did not stop striking Plaintiff until Anderson physically pulled Hays off him. Correctional officer I Roy Eldridge ("Eldridge") also saw Hays swing at Plaintiff's head four times while Plaintiff was restrained by Mayes and Bennett. Eldridge also told Hays to stop but Hays did not stop until Anderson intervened. Staff witnesses to the incident believed Hays's actions were unjustified and that he used excessive force.

Plaintiff was badly hurt by Hays's beating. He suffered vision loss in his left eye and now must wear glasses. He also suffers from migraines, sleep

disturbances, and post-traumatic stress disorder. Plaintiff filed an IRR requesting to be transferred to another facility after the beating. That IRR was denied.

Hays was criminally charged with offender abuse. Since then, other correctional officers have retaliated against Plaintiff in response to the criminal charge. On April 6, 2018 and July 25, 2018, correctional officers assaulted Plaintiff for filing grievances related to the February 7, 2018 assault. On September 24, 2018, Plaintiff was brought out of his cell while he was naked and sexually assaulted by two correctional officers. While Plaintiff was restrained, one officer placed their finger in his anus and the other grabbed his penis. Plaintiff has received multiple baseless conduct violations since February 7, 2018 after filing IRRs and grievances related to the above incidents.

In Count III, Plaintiff further alleges that Steele and Smallen "were aware of the facts mentioned above from which they could infer the existence of a substantial risk of serious harm to Plaintiff," that they actually drew that inference, and that they failed to take reasonable steps to protect Plaintiff.

In Count V, as part of his failure to train and supervise claim against Precythe, Steele, and Payne, Plaintiff alleges that Hays was hired despite his record of domestic violence, that Hays was allowed to continue working as a correction officer after two Missouri courts entered orders of protection against him, that Hays was not seriously disciplined for repeated inappropriate behavior, and that

9

Hays was promoted even though he had engaged in conduct that should not be tolerated at a correctional institution. He also alleges that Precythe and Payne have failed to transfer him to another facility to prevent further retaliation and violence.

Defendants Steele and Payne move to dismiss Count III. Defendants Precythe, Steele, and Payne move to dismiss Count V. For the reasons set forth below, the Motion to Dismiss will be granted.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8h Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or

inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 526 (quoted case omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678-79 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.* at 679.

## Discussion

In their Motion to Dismiss, the Supervisory Defendants seek dismissal of Plaintiff's failure to protect claim against Steele and Smallen (Count III) and Plaintiff's failure to train and supervise claim against Precythe, Steele, and Payne (Count V). In support of their Motion, the Supervisory Defendants that the claims against them are based on *respondeat superior*, that Plaintiff has failed to plead

sufficient facts to support his claims, and that they are entitled to qualified immunity. They also assert that Plaintiff is not entitled to injunctive relief.

**Count III-Failure to Protect**

"To state a failure-to-protect claim, [a plaintiff is] required to allege that (1) defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they actually drew the inference, and (3) they failed to take reasonable steps to protect him." *Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 836–38, 844 (1994)).

Plaintiff has not alleged sufficient factual information that Steele and Smallen had actual knowledge of the risk posed by Hays. The Complaint states merely that Steele and Smallen "were aware of the facts mentioned above," referring, assumedly, to the allegations of ongoing harassment of Plaintiff and threats by Hays and Bennett. This statement is both conclusory and a threadbare recitation of one of the elements of a failure to protect claim.

The 12(b)(6) plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* The Complaint lacks factual allegations as to why or how Steele and Smallen knew

about the harassment and threats. Plaintiff alleges that he told corrections officer Lloyd Russell about the harassment and told Corizon Healthcare employee Ashley Kopp that Hays and Bennett were likely going to assault him. He also states that he "consistently reported the harassment … to others within ERDCC," "requested protective custody," "told many people" about the harassment, and refused to come out of the Safety Cell immediately prior to the assault because he feared Hays and Bennett would assault him. However, these allegations do not show directly or inferentially that Steele and Smallen knew of Plaintiff's complaints. Because these allegations fail to raise the issue Steele and Smallen's knowledge above a speculative level, Plaintiff's Count III must, necessarily, be dismissed at this time.

**Count V-Failure to Train and Supervise**

To show that Defendants Precythe, Steele, and Payne are liable under § 1983 based on a failure to train or supervise their employees, Plaintiff must show that the Defendants "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (quotations omitted). Count V alleges Steele and Payne "failed to train/supervise corrections officers with a history of domestic violence and [have] failed to take prompt remedial action to discipline or terminate the employment of corrections officers

who abuse coworkers or offenders." Count V alleges Precythe's failure to train/supervise the wardens who hire such corrections officers.

Much like Count III, Plaintiff has not alleged sufficient facts regarding Precythe, Steele, and Payne's having notice of a pattern of unconstitutional acts committed by their subordinates. The Complaint lists the actions of Hays that Precythe, Steele, and Payne supposedly failed to remediate or address with termination, but it does not allege any facts that directly or inferentially show that the Supervisory Defendants had notice of these actions. Count V must be dismissed at this time.

### *Respondeat superior* and qualified immunity

Neither Count III or Count V adequately states a cause of action. Therefore, the Court need not reach Defendants' arguments that those claims are barred by the doctrine of *respondeat superior* or qualified immunity.

### Injunctive relief

Defendant argues that Plaintiff's request for injunctive relief should be dismissed as moot because Plaintiff is no longer housed at ERDCC and does not plead the requisite elements for an injunction. Plaintiff replies that he is entitled to injunctive relief because he could be sent back to ERDCC at any time, he is still being retaliated against by the correctional officers at his new facility, and that injunctive relief should not be addressed at the motion to dismiss stage. Because

the claims against Precythe and Payne are being dismissed, the Court declines to address Plaintiff's injunctive relief request at this time. Because Plaintiff will be granted leave to amend his Complaint, he is free to consider the changed circumstances on amendment.

## Conclusion

Based upon the foregoing analysis, Defendants Precythe, Steele, Payne, and Smallen's Motion to Dismiss will be granted. Plaintiff will be granted leave to file an amended complaint within 14 days of the date of this Opinion, Memorandum, and Order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Anne Precythe, Troy Steele, Stanley Payne, and Lonnie Smallen's Motion to Dismiss [Doc. No. 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts III and V are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint within 14 days of the date of this Opinion, Memorandum, and Order.

Dated this 30th day of September, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE